No. 18-40270

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____


## ALFRED BOURGEOIS,

### Petitioner,

### v.

## UNITED STATES OF AMERICA,

### Respondent.

_____

Petitioner's Reply in Support of Motion for Leave to File Successive § 2255 Petition in the United States District Court for the Southern District of Texas

_____

Victor J. Abreu
Stuart Patchen
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Victor_Abreu@fd.org
Stuart_Patchen@fd.org

Counsel for Petitioner

Dated: July 3, 2018

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................1

   I.  Mr. Bourgeois Should Be Permitted To File A Successor Petition Because *Atkins v. Virginia* Was Unavailable To Him At The Time Of His Initial § 2255 Proceedings. ...........................................1

   II.  The District Court Relied On Non-Clinical Standards, In Violation Of *Atkins* And *Moore*. ..........................................................5

CONCLUSION ....................................................................................................8

# TABLE OF AUTHORITIES

**Federal Cases**

*Atkins v. Virginia*, 536 U.S. 304 (2002) ................................................................. 5

*Clark v. Quarterman*, 457 F.3d 441 (5th Cir. 2006) .............................................. 12

*In re Cathey*, 857 F.3d 221 (5th Cir. 2017) ..................................................... 6, 7, 8

*In re Simpson*, 555 F. App'x 369 (5th Cir. 2014) ................................................. 12

*Moore v. Texas*, 137 S. Ct. 1039 (2017) ................................................................ 6

*United States v. Webster*, 421 F.3d 308 (5th Cir. 2005) ........................................ 12

*Williams v. Quartermann*, 293 F. App'x 298 (5th Cir. 2008) ............................... 12

**Federal Statutes**

28 U.S.C. § 2244(b)(2)(A) ..................................................................................... 5

28 U.S.C. § 2255 .......................................................................................... *passim*

**INTRODUCTION**

Alfred Bourgeois filed a Motion for Order Authorizing the Southern District of Texas to Consider a Successive Petition under 28 U.S.C. § 2255 on March 28, 2018, in which he requests permission to file a claim for relief alleging that he is intellectually disabled and ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). On June 26, 2018, the government filed a response opposing that motion. Pursuant to Federal Rule of Appellate Procedure 27(a)(4), Mr. Bourgeois respectfully submits this Reply in response to several of the arguments raised by the government. In all other respects, Petitioner relies on the arguments raised in his initial Motion.[1]

**ARGUMENT**

**I. Mr. Bourgeois Should Be Permitted To File A Successor Petition Because Atkins V. Virginia Was Unavailable To Him At The Time Of His Initial § 2255 Proceedings.**

28 U.S.C. § 2244(b)(2)(A) authorizes the filing of a successor habeas petition for a claim relying on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

---

[1] Petitioner's initial motion for permission to file a successor § 2255 motion, Doc. 00514404917, shall be cited as "Successor Mot." followed by the relevant page number. The government's response, Doc. 00514529907, shall be cited as "GR" followed by the relevant page number.

unavailable." Mr. Bourgeois argues for relief under *Atkins*, which all parties agree was made retroactive to cases on collateral review. *Atkins* was decided prior to Mr. Bourgeois' initial § 2255 proceedings and Mr. Bourgeois raised an *Atkins* claim in those proceedings. The District Court, however, employed non-clinical standards in the denial of the initial *Atkins* claim. The use of these non-clinical standards, which was consistent with this Court's governing precedential law, excluded the vast majority of intellectually disabled individuals from relief, and was ultimately invalidated under *Moore v. Texas*, 137 S. Ct. 1039 (2017). Thus, even though *Atkins* predated Mr. Bourgeois' § 2255 proceedings, *Atkins* was functionally unavailable to him before the Supreme Court decided *Moore*. Accordingly, as this Court held in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017), Mr. Bourgeois is entitled to file a post-*Moore* motion for relief under *Atkins*. *See* Successor Mot. at 34-44.

In its response, the government concedes that *Atkins* applies retroactively, GR at 14, but argues that Mr. Bourgeois' request should be denied because *Moore* has not been found to be retroactive. The government further argues that *Cathey* is inapplicable. GR at 26.

The government's arguments lack merit. Petitioner's argument does not rest on the retroactivity of *Moore*, but on the fact that *Atkins* was both retroactively

applied and unavailable to Petitioner before *Moore* was decided.  As this Court found in *Cathey*, *Atkins* was "previously unavailable" to petitioners, like Mr. Bourgeois, whose first habeas petitions were filed after *Atkins* but who were precluded from relief due to pre-*Moore* precedent and the application of non-clinical standards to their claims.  *See* Successor Mot. at 34-35.

Nevertheless, the government asserts that *Cathey* is inapplicable and "turns on a procedural distinction" because, unlike Mr. Bourgeois, Cathey never presented an *Atkins* claim in his first § 2255 motion.  GR at 25-26.  The government's attempt to distinguish *Cathey* is unavailing and relies on a procedural distinction without a difference.  Regardless of whether Mr. Bourgeois did or did not pursue *Atkins* relief in his first § 2255 motion, he, like Cathey, could not have prevailed under pre-*Moore* precedent.  Indeed, Mr. Bourgeois did not prevail for the same reasons Cathey would have been denied relief had he raised an *Atkins* claim in his first petition – the District Court relied on erroneous pre-*Moore* precedent and non-clinical standards rejected in *Moore*.  *Atkins* was as unavailable to Mr. Bourgeois as it was to Cathey.  *See Cathey*, 857 F.3d at 230 (recognizing the "gray area of previous unavailability despite technical availability").  In essence, the government seeks to punish Mr. Bourgeois because he was *too* diligent, and raised an *Atkins* claim despite the barriers which this Court's then-

3

current precedent put in the way of relief. Mr. Bourgeois should not be penalized for being more diligent than Cathey.

Paradoxically, the government also argues that Mr. Bourgeois' Motion should be denied because he did not seek a certificate of appealability ("COA") from the District Court's denial of his *Atkins* claim. GR at 25. On the one hand, the government faults Mr. Bourgeois for being too diligent. On the other hand, it faults him for not being diligent enough. As in *Cathey*, however, this Court's pre-*Moore* precedent precluded relief, and requesting a COA at that time would have been futile. *See Cathey*, 857 F.3d at 230 (petitioner could not be faulted for failing to raise an *Atkins* claim in his first petition because pre-*Moore* precedent gave Cathey "no reason to believe he . . . would satisfy an *Atkins* claim"). Moreover, whether Mr. Bourgeois sought a COA is immaterial to the availability of *Atkins* relief via a successive § 2255 petition.

Consistent with Mr. Bourgeois' position, the Texas Court of Criminal Appeals has within the last year authorized a number of successive state habeas applications seeking reconsideration of previously rejected *Atkins* claims. *See Ex parte Guevara*, WR-63,926-03 (Tex. Crim. App. June 6, 2018) (unpublished) (attached hereto as Exhibit A); *Ex parte Lizcano*, WR-68,348-03 (Tex. Crim. App. June 6, 2018) (unpublished) (attached hereto as Exhibit B); *Ex parte Long*, WR-

4

76,324-02 (Tex. Crim. App. June 27, 2018) (unpublished) (attached hereto as Exhibit C). In each instance, the case has been remanded to the state habeas court to allow for a new assessment of intellectual disability under the standards articulated by the Supreme Court in *Moore*. Because the District Court here assessed Mr. Bourgeois' *Atkins* claim under the same non-clinical standards applied by Texas courts pre-*Moore*, *see* section II, *infra*, he is entitled to the same relief.

**II.     The District Court Relied On Non-Clinical Standards, In Violation Of *Atkins* And *Moore*.**

The government does not meaningfully dispute that the District Court employed non-clinical criteria in disposing of Mr. Bourgeois' *Atkins* claim. Instead, the government argues that Mr. Bourgeois' application "seeks to relitigate the district court's previous factual determinations and legal conclusions made on his first § 2255 motion . . . and the district court's factual determination as to the reliability and credibility of the competing medical expert witnesses on both sides." GR at 23-24. The government also contends that "[t]o the extent Bourgeois argues that *Moore* affects this Court's approach in post-*Atkins* cases determining death penalty eligibility, the Court of Criminal Appeals of Texas' use of outdated non-clinical standards for determining intellectual disability claims in *Ex parte Briseno* … is not an issue in this federal capital murder case." *Id.* at 19.

5

The government errs on both counts. The District Court's findings were not based on a determination of the "reliability and credibility" of the experts presented by each side, but they were instead based on a rejection of clinical standards to which *Moore* held any *Atkins* analysis must adhere. Indeed, the District Court identified the diagnostic standards for intellectual disability as set forth by the medical community and explicitly declined to follow these standards when analyzing the evidence of Mr. Bourgeois' intellectual and adaptive functioning. Successor Mot. at 34-44. The District Court's findings were further characterized by analyses that were contradicted by medical standards and which the Supreme Court repudiated in *Moore*. *Id.* For example, the District Court invoked two *Briseno* factors – whether Mr. Bourgeois appeared intellectually disabled to lay witnesses and whether he was capable of engaging in a normal conversation – when determining if Mr. Bourgeois had significant deficits in adaptive functioning, a practice also repudiated by *Moore*. *Id.* at 40-42. Thus, the District Court rejected the defense's presentation, including expert testimony, *because* it conformed to clinical standards, while at the same time rewarding the government and its experts for violating those standards. Since the District Court's determinations, credibility or otherwise, were made through the lens of arbitrary, non-clinical standards rather than the standards adopted by the medical community, *Moore* renders these determinations invalid.

Similarly, the District Court's findings on prong one were not based on credibility determinations at all. The District Court did not find Mr. Bourgeois' IQ testing to be invalid. Instead, the District Court identified the correct clinical standard for the establishment of prong one, found that Mr. Bourgeois' IQ scores were in the range for intellectual disability, and held that the medical community would have found that he met prong one under current clinical standards. *See id.* at 6-8, 35-39. This should have ended the inquiry. However, the District Court went on to employ a more exacting standard that was unsupported by the medical community and found that Mr. Bourgeois' IQ scores failed to satisfy this non-clinical standard. *See* Successor Mot. at 35-37.

The government's argument that *Moore* does not apply to Mr. Bourgeois' case because it occurred in a federal prosecution and was not presided over by the Texas Court of Criminal Appeals also fails. GR at 19. The Supreme Court's holdings in *Moore* were not specific to Texas, but set forth standards to be applied to *Atkins* hearings throughout the United States. As set forth above, the District Court's analysis violated *Moore* in a number of ways, including by employing, *inter alia*, non-clinical standards in the disposition of Mr. Bourgeois' *Atkins* claim, two *Briseno* factors, and many of the violations of the medical standards that were specifically repudiated in *Moore*. Indeed, the Fifth Circuit case law the District Court relied on in its opinion, *United States v. Bourgeois*, No. C-02-CR-216 at 6,

illustrates the extent to which the non-scientific standards repudiated by *Moore* permeated this Circuit's jurisprudence and the court's analysis. *See Williams v. Quartermann*, 293 F. App'x 298, 309-311 (5th Cir. 2008) (citing *Briseno* factors), *Clark v. Quarterman*, 457 F.3d 441, 447 (5th Cir. 2006) (same), and *United States v. Webster*, 421 F.3d 308, 313 (5th Cir. 2005) (applying non-scientific standards in affirming the denial of an intellectual disability claim).

Lastly, the government suggests that this Court should consider the length of the hearing and the District Court's opinion in determining whether to grant Mr. Bourgeois' Motion. *See* GR at 6. These factors are irrelevant. The District Court employed improper standards when assessing the evidence presented. Neither the length of the hearing nor the length of the District Court's opinion cures this error.

## CONCLUSION

Under current clinical standards, Mr. Bourgeois has made a prima facie showing that he is intellectually disabled. *See* Successor Mot. at 5-27. As the government acknowledges, a "'prima facie showing' is 'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" GR at 13 (quoting *In re Simpson*, 555 F. App'x 369, 371 (5th Cir. 2014) (unpublished)). This Court should authorize the filing of a successive § 2255 motion and provide Mr. Bourgeois an opportunity to have the district court evaluate his claim under current, post-*Moore*, clinically accepted standards.

For the reasons set forth above and in his initial Motion, Mr. Bourgeois respectfully requests that this Court grant his Motion for Order Authorizing the Southern District of Texas to Consider A Successive Petition Under 28 U.S.C. § 2255.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Victor J. Abreu
Victor J. Abreu
Stuart Patchen
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Victor_Abreu@fd.org
Stuart_Patchen@fd.org

Counsel for Petitioner

</div>

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This reply contains 1,861 words.

2.      The motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(7)(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 10.0 in 14 point Times New Roman.

/s/ Victor J. Abreu
Victor Abreu

# CERTIFICATE OF SERVICE

I, Victor J. Abreu, hereby certify that on the 3rd day of July, 2018, I served

the foregoing on the following persons through the Court's Electronic Filing

System and first class mail, postage prepaid:


Carmen Castillo Mitchell, Esq.
United States Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, TX 77002-5010

Paula C. Offenhauser, Esq.
United States Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, TX 77002-5010

Counsel for Respondent/Appellee


/s/ Victor J. Abreu
Victor J. Abreu

# EXHIBIT
# A



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-63,926-03

### EX PARTE GILMAR ALEXANDER GUEVARA, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. 847121-C IN THE 180TH JUDICIAL DISTRICT COURT HARRIS COUNTY

*Per curiam*.

## O R D E R

This is a subsequent application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.[1]

In May 2001, applicant was convicted of capital murder and sentenced to death. *See* TEX. PENAL CODE ANN. § 19.03(a); Art. 37.071 § 2. We affirmed his conviction and sentence on direct appeal. *Guevara v. State*, 97 S.W.3d 579, 580 (Tex. Crim. App. 2003).

_____

[1] All references to articles herein refer to the Texas Code of Criminal Procedure.

In December 2002, applicant filed in the trial court his initial application for a writ of habeas corpus challenging the merits of his conviction and resulting sentence. The judge entered findings of fact and conclusions of law recommending that relief be denied. In January 2006, applicant filed his first subsequent writ application. In this application, applicant raised the claim that his execution would violate *Atkins v. Virginia*, 536 U.S. 304, 321 (2002), because he "was and is a person with mental retardation, as this Court has now interpreted that status . . . by its opinion in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004)." Applicant supported his *"Atkins* claim" with the report of a clinical neuropsychologist who administered a Spanish-language IQ test and concluded that applicant is intellectually disabled.

In 2007, this Court issued an order denying relief on applicant's initial writ application and dismissing applicant's first subsequent application as an abuse of the writ. *Ex parte Guevara*, WR-63,926-01 & WR-63,926-02 (Tex. Crim. App. 2007) (not designated for publication). In its order, this Court cited *Ex parte Blue*, in which the Court followed the precedent set in *Briseno* to evaluate a claim of intellectual disability. *Ex parte Blue*, 230 S.W.3d 151, 163-66 (Tex. Crim. App. 2007).

Recently, in *Moore v. Texas*, 137 S. Ct. 1039 (2017), the United States Supreme Court rejected the use of the *Briseno* factors to analyze adaptive deficits because they creat[e] an unacceptable risk that persons with intellectual disability will be executed." *Id.* at 1051. The Supreme Court held that this Court improperly "fastened its intellectual-disability

determination to 'the AAMR's 1992 definition of intellectual disability that [it] adopted in *Briseno* for *Atkins* claims presented in Texas death-penalty cases.'"[2]  *Id*. at 1053.

Applicant filed the instant subsequent (-03) writ application with the District Clerk in March 2018.  He alleges in this subsequent application that the Supreme Court's *Moore* decision constitutes a new legal basis for relief that was not available when he originally raised his *Atkins* claim.  *See* Art. 11.071 §5(a)(1).  He contends that he is entitled to a review of his *Atkins* claim on the merits and a grant of relief.

We find that, in light of *Moore*, applicant has satisfied the requirements of Article 11.071 § 5(a)(1) with regard to his first allegation in the instant subsequent writ application. To the extent that applicant raises other allegations in this application, they do not satisfy Article 11.071 § 5.

In order for this Court to determine whether applicant is intellectually disabled and exempt from the death penalty under *Atkins*, further fact-finding is necessary.  Therefore, we remand the application to the habeas court for a live hearing to develop evidence, enter findings of fact and conclusions of law, and make a new recommendation to this Court on the issue of intellectual disability.  The habeas court may receive evidence from mental health

---

[2]  *See* American Association on Mental Retardation (AAMR), Mental Retardation: Definition, Classification, and Systems of Supports (9th ed. 1992).

experts and any witnesses whose evidence the court determines is germane to the question of intellectual disability. The court should consider all of the evidence in light of *Moore*, 137 S. Ct. 1039, and should not consider the *Briseno* factors.

IT IS SO ORDERED THIS THE 6TH DAY OF JUNE, 2018.

Do not publish

# EXHIBIT
# B



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-68,348-03

**EX PARTE JUAN LIZCANO, Applicant**

## ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. W05-59563-S IN THE 282ND JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per curiam*.

## O R D E R

This is an initial application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.

In October 2007, applicant was convicted of capital murder and sentenced to death for killing Dallas Police Officer Brian Jackson. We affirmed the conviction and sentence on direct appeal. *Lizcano v. State*, No. AP-75,879 (Tex. Crim. App. May 5, 2010) (not designated for publication). Applicant then filed an application for writ of habeas corpus. In that application, applicant alleged in his sixth claim for relief that he is intellectually disabled

and ineligible for the death penalty under the United States Supreme Court's holding in *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). We denied that application in 2015. *Ex parte Lizcano,* No. WR-68,348-03 (Tex. Crim. App. April 15, 2015) (not designated for publication).

Applicant then filed a federal habeas petition. While his petition was pending, the United States Supreme Court handed down its opinion in *Moore v. Texas,* 137 S.Ct. 1039 (2017). In *Moore v. Texas*, the Supreme Court rejected the use of the *Briseno*[1] factors to analyze adaptive deficits because they "creat[e] an unacceptable risk that persons with intellectual disability will be executed." 137 S.Ct. at 1051.

Following the *Moore v. Texas* opinion, the federal district court stayed its proceedings to enable applicant to seek this Court's reconsideration of his *Atkins* claim. *See Lizcano v. Davis,* No. 3:16-cv-1008-B, Doc.51 (N. Dist. Oct. 6, 2017) (order adopting magistrate's recommendation and granting stay). Applicant has now submitted a suggestion for this Court to "reconsider its April 15, 2015, order on its own initiative." He asks us to reconsider his *Atkins* claim in light of *Moore v. Texas*.

While the Rules of Appellate Procedure do not permit the filing of a motion for rehearing following the denial of a post-conviction application for writ of habeas corpus, we may on our own initiative choose to exercise our authority to reconsider our initial disposition of a capital writ. *See Ex parte Moreno,* 245 S.W.3d 419, 427-29 (Tex. Crim. App. 2008) (stating that we may choose to exercise this authority only "under the most extraordinary of

---

[1] *Ex parte Briseno,* 135 S.W.3d 1, 8 (Tex. Crim. App. 2004).

circumstances"). In light of the United States Supreme Court's recent opinion in *Moore v. Texas*, we exercise our authority to reconsider this case on our own initiative.

This cause is remanded to the habeas court to allow it the opportunity to develop evidence, make new or additional findings of fact and conclusions of law, and make a new recommendation to this Court on the issue of intellectual disability. The habeas court may receive evidence from mental health experts and any witnesses whose evidence the court determines is germane to the question of intellectual disability. The court should consider all of the evidence in light of the *Moore v. Texas* opinion. The habeas court shall then make findings of fact and conclusions of law regarding the issue of intellectual disability and any other issue the court deems pertinent to the resolution of this claim.

This cause will be held in abeyance pending the trial court's compliance with this order. The habeas court shall resolve the issue and make the required findings and conclusions within 60 days of the date of this order. Immediately thereafter, the clerk shall forward to this Court a supplemental transcript containing the trial court's findings of fact and conclusions of law, any additional documents filed, and the transcripts of any hearings. Any extensions of time shall be obtained from this Court.

IT IS SO ORDERED THIS THE 6TH DAY OF JUNE, 2018.

Do not publish

# EXHIBIT
# C



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-76,324-02

### EX PARTE STEVEN LYNN LONG, Applicant

### ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS IN CAUSE NO. W05-52918-R(B) IN THE 265TH JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per curiam*.

### O R D E R

We have before us a post-conviction application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071 § 5.

In October 2006, a jury convicted applicant of the May 2005 offense of capital murder for murdering a person in the course of committing or attempting to commit aggravated sexual assault. TEX. PENAL CODE § 19.03(a)(2). The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071,

and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Long v. State*, No. AP-75,539 (Tex. Crim. App. Apr. 8, 2009)(not designated for publication). On May 29, 2008, applicant filed in the trial court his initial post-conviction application for a writ of habeas corpus in which he raised three claims, including a claim that he is intellectually disabled and ineligible for execution. This Court denied applicant relief on the claims raised in his initial writ application. *Ex parte Long*, No. WR-76,324-01 (Tex. Crim. App. Mar. 7, 2012)(not designated for publication).

On August 3, 2017, applicant filed in the convicting court his first subsequent application. In this application, applicant re-asserts that he is intellectually disabled and, therefore, not subject to execution. On March 28, 2017, the United States Supreme Court issued its decision in *Moore v. Texas*, 137 S. Ct. 1039, 1044 (2017). In light of the *Moore* decision and the facts presented in applicant's application, we found that applicant's execution should be stayed. *See Ex parte Long*, No. WR-76,324-02 (Tex. Crim. App. Aug. 21, 2017)(not designated for publication). We now find that applicant has satisfied the requirements of Article 11.071 § 5, and we remand his application to the convicting court for a live hearing to further develop evidence and make a new recommendation to this Court on the issue of intellectual disability.

IT IS SO ORDERED THIS THE 27th DAY OF JUNE, 2018.

Do not publish